FRANK P. RUSS *v.* CENTRAL VERMONT RAILWAY CO.

October Term, 1905.

Present: ROWELL, C. J., TYLER, MUNSON, HASELTON, and POWERS, JJ.

Opinion filed February 16, 1906.

*Master and Servant—Railroads—Collision—Injury to Engineer—Competency of Engineer—His Familiarity with Road—Evidence—Sufficiency—Question for Jury.*

In an action for injuries received by a railroad engineer while on his engine on a siding at a station, by being run into by an engine in charge of another of defendant's engineers, and which was running extra from the south with orders to meet plaintiff's train at said station, evidence examined, and *held* that it cannot be said, as matter of law, that either plaintiff or any of his train crew was negligent in respect of the open switch.

Therefore, though the colliding engine was in charge of an experienced engineer, yet, as it appeared that he had made only a few trips over that section of the road, and plaintiff's evidence tended to show that defendant knew just what opportunity said engineer had to become familiar with the line, and tended to show that an engineer comes to know his location, when not able to see, by the bridges he has passed, the distance he has traversed, the swing of his engine at curves, etc.; that there was a dense fog at the time of the accident; that the rules required said engineer to stop south of the south switch at said station; that he approached the yard without sounding the required whistle, made no stop, and came upon the switch and to the point of collision at a speed of from 15 to 20 miles an hour; plaintiff was entitled to argue to the jury that said engineer's failure to stop was not due to his negligence, but to his lack of familiarity with the road, and that defendant was negligent in not requiring him to have more knowledge of the road before undertaking the duties of an engineer; and so, it was error to order a verdict for defendant.

CASE for negligence. Plea, the general issue. Trial by jury at the December Term, 1904, Windsor County, *Watson,* J., presiding. Verdict ordered for the defendant to recover its costs; and judgment thereon. The plaintiff excepted.

*William Batchelder,* and *Plumley & Plumley* for the plaintiff.

*Hunton & Stickney* for the defendant.

MUNSON, J. A verdict for the defendant was directed at the close of the plaintiff's evidence.

The plaintiff, engineer of train 32, was injured while on his engine on a siding in the Northfield yard, by being run into by an engine in charge of one Curotte, which was running extra from the south with orders to meet No. 32 at Northfield. Curotte was an experienced engineer from another section, who had recently been engaged in instructing defendant's

engineers in handling a type of engines new to the road. While doing this he was himself being instructed in and observing the physical features of the road and its margins, with a view to being regularly employed on the line.   He had subsequently made a few trips over the road as engineer, and was so running on this occasion.

The evidence of the plaintiff tended to show that an engineer comes to know his location, when not able to see, by the bridges he has passed, the distance he has travelled, the swing of the engine at curves, and the differences in sound; that the defendant had the means of knowing just what opportunity Curotte had had for becoming familiar with the line; that there was a dense fog at the time of the accident; that the rules required Curotte to stop south of the south switch; that he approached the yard without sounding the required whistle, made no stop, and came upon the switch and to the point of collision at a speed of from fifteen to twenty miles an hour. This was evidence upon which the plaintiff was entitled to argue to the jury that Curotte failed to stop because he did not know where he was; that this was not due to negligence but to lack of familiarity with the road; that prudence required that one have more knowledge of the road before undertaking the duties of an engineer, and that the defendant was negligent in putting Curotte upon this service with the knowledge he had.

So a verdict for the defendant could not be directed, unless it could be said as matter of law that the plaintiff was chargeable with negligence as regards the switch.

All that can be said definitely about the switch is that it must have been open at the time of the accident, for it threw Curotte's engine upon the siding, and that it must have been in place about fifteen minutes before when a train went through

on the main line.   There was no direct evidence as to when or by whom it was opened.   The crew of No. 32 had been shifting cars in the south part of the yard, on tracks leading to the south switch, before the plaintiff came to the engine, and continued to do so until the accident occurred.   The testimony of the plaintiff tended to show that there was another crew that was or had been doing work in the yard, but he did not know that they had anything to do in the south part of the yard, and thought that they did not have.   There was no further evidence touching the presence or possible action of anyone not belonging to plaintiff's crew.   There was no evidence tending to show that any member of that crew, or other fellow servant of the plaintiff, had been to the switch prior to the incident hereafter related.

The "hostler" who had brought out the engine while plaintiff was at breakfast, and was handling it while the plaintiff was at work on the lubricator, testified during his cross-examination by defendant's counsel, that shortly before the collision a trainman going south past the engine "said he was going up to flag and throw a couple of cars in the train." This is all that we know of the trainman, his orders or his movements.

It appears from the record that the rulings which brought this evidence into the case were made upon an understanding that the trainman delivered some order to the witness, and that the answer obtained was not in accordance with the limitations imposed by the court.   Exceptions were taken as the questions were asked and rulings made, but no exception was taken to the answer.   The plaintiff now complains of the fact that the court finally treated the answer as in the case and of the effect given it, while the defendant insists that the plaintiff has no exception that can avail him.   The legal admissibility of the

evidence is not argued by either side.   We shall proceed with the consideration of the case upon the assumption that this evidence is properly before us.

The trainman's statement cannot be considered an order from the conductor to the engineer.   It was not that in form, and it sufficiently appears from the evidence that it was not that in fact.   The engineer continued to look to the conductor for signals, and did nothing except upon the conductor's motion.   It was the theory of counsel, however, as stated in urging the admissibility of the evidence, that the purpose of the conductor was communicated to the engineer in order that he might know how far he was to go ahead when ordered to do so.   But this can hardly be the explanation, for the work done subsequent to the communication involved at least two forward movements which were stopped short of the switch on the conductor's motion, and just before the accident occurred the engineer had received a signal to back.   There is certainly nothing in the above theory that serves to reconcile the implications contained in the trainman's statement with the evidence hereafter referred to regarding the work of the train.

It appears from the record that in disposing of the case the court treated this movement and remark of the trainman as sufficient proof that the switch was then open, and that the fact was known to the conductor and the acting engineer.   This view was doubtless impressed upon the court by some answers of the witness which indicated that the collision occurred very soon after the trainman passed.   But when all the testimony of the witness is taken together, it may be doubted if the part relating to the trainman tended to show that the switch was open at that time.   When the several movements executed after the trainman passed are considered, the evidence in question seems rather to suggest that the trainman himself opened

the switch in the interval that elapsed between his passing and the occurrence of the accident.

The court considered that the only conclusion that could fairly be drawn from the evidence was that the switch was opened by some one of the trainmen of No. 32 before the trainman referred to passed the engine. But we think there was evidence in the case which precluded the direction of a verdict upon that ground. We have suggested that some circumstances point to the trainman who passed the engine as the one who opened the switch; but if such an inference could have been drawn by the court from uncontradicted evidence, we think it could not have been done with the case standing as it did.

The statement of the trainman, as presented by the testimony of the witness, implied that the conductor had given an order which required the use of the south switch in the work of making up the train. This statement, so presented, was the only evidence in the case that tended to show that the work of the train required that use. All the other evidence tended to show that the work of the train was confined to the sidings on the west side of the main line. The plaintiff testified that the work of making up the train was not completed when the accident occurred, that there had been no occasion for them to use the south switch, and would have been none until they went out onto the main line to leave, and that he could not do this without going to the telegraph office and getting his clearance. In this condition of the evidence, we do not think that the court could assume the truth of the testimony regarding the trainman's statement. Nor do we think that the proximity of the crew of No. 32, and the absence of evidence of the proximity of other persons, were sufficient to fasten the

opening of the switch, as matter of law, upon some member of that crew.

As this will require a reversal of the case, it is not necessary to consider the plaintiff's claim that he had a right to rely upon the rule requiring extra trains to come to a stop south of the south switch, and that it is therefore immaterial when or by whom the switch was opened. Nor is it necessary that we determine the meaning and application of the printed rules relating to the duties of trainmen when using a switch; and in view of the number and variety of the rules that were submitted, and the technical terms contained in them, we do not deem it wise to undertake their construction at this time, but think it better to leave to the court below the construction of whatever rules may be pointed out on another trial as applicable to the case as it may then be presented.

*Judgment reversed and cause remanded.*